(Reap. Dec. 11058)

C. J. TOWER & SONS OF BUFFALO, INC. *v.* UNITED STATES

Entry No. 2134.

(Decided August 16, 1965)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff. *John W. Douglas*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

RICHARDSON, Judge: The importation in issue is a machine described on the invoice as a 4-cubic yard spindle mixer model No. 112S–2A which is, in fact, a spindle-type tilt concrete mixer, exported from Canada April 30, 1960, by Koehring-Waterous, Ltd., Brantford, Ontario, to its sole United States purchaser, C. S. Johnson Co., Champaign, Ill., a division of Koehring-Waterous Corp. of Milwaukee, Wis., which owns the exporter corporation; invoiced and entered at $8,690, Canadian dollars. The machine was appraised on the basis of constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at $16,468, Canadian dollars, less 7½ per centum and 1 per centum, less sales tax included (at list, less 7½ per centum level), packed.

The plaintiff has appealed for reappraisement, contending that the proper basis of valuation of the merchandise should be export value under section 402(b) of the Tariff Act of 1930, as amended, and that the correct export value is the invoice unit value; and, alternatively, if the court should find constructed value under section 402(d) to be the correct basis of value, the invoiced unit price and entered value should prevail.

The defendant contends that the entered value does not fairly reflect the market value of the merchandise, and to do so requires a consideration of the selling price in the domestic market of Canada.

It is conceded that the merchandise does not appear on the Secretary of the Treasury's final list and that it is governed by the Customs Simplification Act of 1956.

The evidence consists of the testimony of one witness for the plaintiff, Ragnar W. Anderson, of Brantford, Ontario, vice president and controller of the exporter, Koehring-Waterous, Ltd.; and three documentary exhibits by the plaintiff and one by the defendant: (1) a pamphlet illustrating the spindle mixer in issue, (2) cost-of-production figures for the mixer, (3) list of all of the sales of spindle mixers

to C. S. Johnson Co. during the years 1959 and 1960, and (A) a letter, dated November 6, 1958, addressed to plaintiff's broker, C. J. Tower & Sons of Niagara, Inc., signed by B. E. Murat, works accountant of Koehring-Waterous, Ltd., setting forth the Canadian selling price of $16,000 for the concrete mixer in effect September 27, 1958.

Mr. Anderson testified that there was no other producer of heavy construction concrete mixers in Canada in 1960, and that it takes about 2 months to produce a mixer. Exhibit 2 showed that the selling price of $8,690 was arrived at by adding a profit of 11.38 per centum ($989.11) to the total factory cost of $7,700.89. The factory cost of $7,700.89 was divided as follows:

| | |
|---|---:|
| Material | $4,045.52 |
| Labour | 1,363.46 |
| Burden | 1,866.10 |
| Selling and General Expense | 425.81 |
| Total cost | $7,700.89 |

The witness explained that the term "burden" in the costs summary referred to manufacturing overhead, including depreciation of building, costs of heat, supervision, and various kinds of indirect labor, such as shop clerks, people who sweep the floor, people who move material around, and others who do work in the shop but do not work directly on a piece. He testified that he was familiar with the sale in question, which was made without any restrictions of any kind on the purchase and that the price did not vary with the quantity sold.

The facts in this case are somewhat analogous to those in the case of *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841. In the *Acme Steel Company* case, the exporter in Canada sold steel strapping to its affiliate parent body in Chicago, Ill., which was its only distributor in the United States. The merchandise was appraised at the entered values, plus 27.40 per centum Canadian dollars, packed, upon the basis of constructed value, as defined in section 402(d) of the tariff act, as amended. The court held export value, as defined in section 402(b) of the act, to be the proper basis for the determination of value of the merchandise, and that such values are the entered values. There was no other Canadian exporter of merchandise of the same general class or kind during the period covered by the importation in the *Acme* case.

The statutory definitions of the values in issue in the *Acme Steel Company* case are the same as those placed in issue in this case and read as follows:

[Sec. 402] (b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such

or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

[SEC. 402] (d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing apraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

[SEC. 402] (f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except * * *.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or * * *.

The issue here is the same as in the *Acme* case, i.e., whether the importer has sustained its twofold burden of establishing that the appraiser's valuation was erroneous and that the basis of dutiable value should be, not constructed value, as determined, but export value, as claimed.

The plaintiff's witness in the *Acme* case testified that the export selling price was arrived at by deducting 30 per centum from the Canadian price. The selling, warehousing, advertising, freight, and tool repair service expenses incurred in making direct sales to Canadian users were represented to amount to 30 per centum more than the cost and profit in making the export sales. None of these various expenses were incurred in connection with shipments to the United States, and were, accordingly, deducted from the selling price to the parent affiliate, as fairly representing savings in costs.

The plaintiff's witness in this case testified that the differential in price in Canadian sales ($16,000) from export sales to the United States ($8,690) was due to the costs of advertising, installation of the machine into a concrete batching plant, and warranty for 6 months or 1,500 hours of operation, whichever occurs sooner, in the case of the Canadian sales. These expenses were not incurred in the case of the sales to their affiliate C. S. Johnson Co. in the United States.

In view of the reconsideration of all the decided cases on the issue of considering foreign domestic prices in determining if there was export value for the importations to the United States which fairly reflected market value of the merchandise under the Customs Simplification Act of 1956, prompted by this case, and arguments of counsel, I am constrained to say that if this were a matter of first impression I would be persuaded to accede to the view that "export value," as used in section 402(b), is the "price . . . for exportation to the United States . . .," of the subject merchandise in the principal markets of the country of exportation, without the introduction of foreign market prices for such or similar merchandise into the equation.

However, the decisions of the Court of Customs and Patent Appeals have determined the issue in the *Acme Steel Company* and *John V. Carr & Son, Inc.* v. *United States*, decided May 20, 1965, 52 CCPA 62, C.A.D. 860, cases. They are precedents and the controlling authorities which determine the course for this court. I followed them in *Union Carbide Corporation* v. *United States*, 55 Cust. Ct. 542, Reap. Dec. 11039, decided by me July 7, 1965, and I must follow them in this case.

On the basis of the decisions in the *Acme Steel Company* and *John V. Carr & Son, Inc.*, cases, I must consider the Canadian domestic price for concrete mixers as a pertinent factor in determining if the export price to the exporter's affiliate in the United States fairly reflects the market value of such merchandise. In so doing, it is observed that the differential between the two prices is approximately 100 per centum and there is no evidence by plaintiff of the specific amounts of costs incurred by the exporter for the factors which plain-

tiff states account for the differential—additional selling expenses, costs of installation, and warranty in Canada. In this posture of the record, I must conclude that plaintiff has failed to prove an export value for the imported merchandise.

Since, under the authorities cited, plaintiff must establish cost of production of domestic merchandise in the country of exportation in order to prove that the export price fairly reflects market value and the record shows that it has not done so, and plaintiff is expressly required to do so under section 402(d) to prove constructed value, plaintiff cannot possibly succeed on an alternative claim that the constructed value is represented by the invoice prices.

Plaintiff has failed to establish export value or constructed value.

On the record in this case, the court finds as facts:

1. The imported merchandise involved in this appeal consists of one 4-cubic yard, model No. 112S–2A spindle mixer, exported by Koehring-Waterous, Ltd., from Canada on April 30, 1960.

2. The said merchandise was appraised on the basis of constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. The said merchandise does not appear on the final list, T.D. 54521.

4. At or about the time of exportation, the said merchandise was not freely sold, or in the absence of sales, was not freely offered for sale for exportation to the United States to all purchasers at wholesale.

5. The said merchandise was sold, for exportation to the United States, exclusively to the C. S. Johnson Co., a selected purchaser at wholesale.

6. The plaintiff herein and the exporter, Koehring-Waterous, Ltd., are related persons within the meaning of section 402(g) of the Tariff Act of 1930, as amended.

7. The plaintiff has failed to prove that the entered value, at or about the time of exportation, represents export value, when cost of production of domestic merchandise is considered a pertinent factor in determining if the export price fairly reflects market value of the merchandise.

8. The plaintiff has failed to prove constructed value.

As conclusions of law, the court finds:

1. The evidence does not overcome the presumption of correctness supporting the appraised value of the merchandise.

2. The proper basis of valuation of the merchandise is constructed value, as defined in section 402(d).

3. Such value is the appraised value.

Judgment will be entered accordingly.