(R.D. 11265)

J. E. BERNARD & CO., INC. v. UNITED STATES

Entry No. 1021455.

(Decided February 28, 1967)

*Wallace & Schwartz* (*Joseph Schwartz* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*Barefoot Sanders,* Assistant Attorney General (*Bernard J. Babb* and *Arthur E. Schwimmer,* trial attorneys), for the defendant.

RAO, Chief Judge: This is an appeal for reappraisement of two injection molding machines, used in the production of plastic articles, which were exported by the manufacturer, Battenfeld Maschinenfabriken GMBH of Meinerzhagen, West Germany (hereinafter called Battenfeld-Germany), on May 9, 1961, to the Battenfeld Corp. of America in Chicago, Ill. (hereinafter called Battenfeld-Chicago), the importer of record.

Appraisement was made on the basis of constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. Accordingly, the two machines, invoiced and entered at DM9,000 and DM13,950, were appraised, respectively, at DM9,975 and DM15,000.

It was the contention of plaintiff, at the time of trial, that export value, as defined in section 402(b) of said tariff act, as amended, is the proper statutory basis of value for the merchandise at bar and that such value is the entered value or, alternatively, that the entered value represents constructed value.

The relevant statutory provisions are as follows:

Section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(f) DEFINITIONS.—For the purposes of this section—
 (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
  (A) to all purchasers at wholesale, or
  (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,
without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.
 (2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

In support of its claim that there was an export value for the instant merchandise, plaintiff offered the testimony of one witness and the affidavit of the president of the German manufacturer.

Mr. Edgar H. Zysset testified that he was the president of Battenfeld Corp. of America, a subsidiary of Battenfeld-Germany, from 1959 until 1962, and that, during 1961, this corporation was the only importer of Battenfeld machines in the United States, purchasing them for resale to plastic processing firms. The witness stated that Battenfeld-Chicago received a 10 percent discount from the price listed by Battenfeld-Germany to help pay or defray the expenses of the Chicago office, such as salaries, promotion expense, rent, and advertising.

The affidavit of Werner Battenfeld recites that he is the principal shareholder of Battenfeld-Germany and its president since 1948, since which time the company has been engaged in the manufacture of molding machines. Battenfeld-Chicago was organized in 1959 as a subsidiary of Battenfeld-Germany and has at all times been wholly owned by Battenfeld-Germany. Until 1961, Battenfeld-Chicago was a selected purchaser, but thereafter it became the exclusive sales agent for Battenfeld-Germany machines in the United States. According to the deponent, the selling price from Battenfeld-Germany to Battenfeld-Chicago never varied by reason of quantity sold and no restrictions as to disposition were imposed by Battenfeld-Germany.

To the best of deponent's knowledge, although there are other German exporters of similar molding machines to the United States, those machines have never been sold at prices higher than those of Battenfeld-Germany to Battenfeld-Chicago, less allowances. Deponent asserted that the machines in issue were sold by Battenfeld-Germany, under conditions and practices which were normal in the German molding machine industry, for a period of at least 1 year prior to exportation. Paragraphs No. 7 and 8, which are particularly germane to the issue herein, read as follows:

7. The prices at which Battenfeld-Germany has sold its molding machines to Battenfeld-Chicago have always included the full cost of production (material, labor, overhead and packing) plus a profit which during the year 1961 ranged from 8% to 10% of the sum of material, labor and overhead.

8. The selling prices of molding machines from Battenfeld-Germany to Battenfeld-Chicago were about 10% lower than the selling prices for home consumption in Germany, because in selling for home consumption, Battenfeld-Germany incurred various selling and distribution expenses, including advertising, warranty, installation of machines, servicing, and salesmen; but none of these selling and distribution expenses were incurred in connection with sales to the United States, since these expenses were borne entirely by Battenfeld-Chicago who acted as a distributor; that the cost of these selling and distribution expenses amounted to about 10% of the Battenfeld-Germany selling prices for home consumption in Germany.

Plaintiff contends that, by virtue of the aforementioned evidence, it has overcome the presumption of correctness attaching to the finding of appraised value and has established *prima facie* that the invoiced and entered prices correctly represent statutory "export value." Plaintiff has abandoned alternative contentions based on constructed value.

In the definitional terminology of the statute, what the plaintiff is claiming is that the entered price was, within the context of trade practices involving the same class of merchandise, a price offered to one or more selected purchasers which fairly reflected the market value of the merchandise. The dispute here centers generally on whether plaintiff has indeed shown that the entered price was a price which fairly reflected the market value of the merchandise.

It is established that, in ascertaining the price which fairly reflects the market value of imported merchandise, all sales in the ordinary course of trade are proper material for consideration. *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841. Where, as here, the export price is lower than the price for home consumption, such differential must be satisfactorily explained. Ordinarily this involves a showing that some of the costs, incurred in sales for home consumption, are not elements entering into export sales. Where the cost differential is adequately accounted for and the export price is shown to be the home market price, less the stated costs, it has been held that such export price fairly reflects the market value of imported merchandise. In general, the problem with which the court is concerned in this case is whether plaintiff has brought forward that quantum of proof which will sufficiently account for the difference between export price and home consumption price and thus shown that the former also fairly reflected market value.

In *United States* v. *Acme Steel Company, supra*, under these circumstances, plaintiff accounted for the home price-export price differential by establishing that the savings effected by the elimination of certain enumerated expenses represented a specific percentage of the home price. While plaintiff did not give cost details for each expense, it did establish such expenses by the testimony of two reliable witnesses and, most significantly, it did give a definite percentage figure for the sum of such expenses.

Here the testimony of plaintiff's single witness had no bearing on the differential between home and export price. The witness testified as to a 10 percent discount given Battenfeld-Chicago to defray certain expenses of the United States subsidiary. There is no indication that the costs thus defrayed are the equivalents of the costs eliminated by Battenfeld-Germany in selling for export. It is possible, for example, that promotion expenses for a given quantity of goods could be con-

siderably lower in Germany than in the United States. Therefore,. proof of the discount given to a United States subsidiary to defray its marketing expenses in the United States would not in any manner tend to prove that the discount is equal to the marketing expenses of such goods when sold by the exporting parent in its home market.

In light of the above, plaintiff's position depends entirely on the sufficiency of certain statements in the manufacturer's affidavit. In particular, plaintiff relies on the paragraphs quoted in full, *supra*, wherein deponent states that certain expenses, amounting to about 10 percent of the Battenfeld-Germany home consumption price, were not incurred in export sales.

It is to be noted that deponent alleges that the cost of expenses incurred only in selling for home consumption amounts to "about 10%" of the price for home consumption and accounts for the difference of "about 10%" between the selling price at home and the export price. These approximations are the only figures offered to satisfy the plaintiff's burden of proof.

Plaintiff purports to find in the *Acme* case, *supra*, a rule governing the proof of export value which will allow this degree of imprecision in the mode of proof without adversely affecting the establishment of a *prima facie* case. Plaintiff contends that a lack of specificity regarding the exact amount of each element of cost is permissible so long as a showing is made that no part of those costs is chargeable to export value. Plaintiff relies on the following language in *Acme*:

\* \* \* Assuming, arguendo, that appellee made out a prima facie case that no part of the 30 percent was chargeable to export value, it would then be incumbent upon the appellant to support the appraiser's action in allowing only 2.60 percent of the difference.

This language, even if it were to be considered as sanctioning the failure to specify each component of the differential, would not justify a failure to adequately prove the amount of the *entire* group of costs allegedly incurred only in home sales. Here, plaintiff has failed in both respects. Not only is there meager proof of the nature of the expenses, but the record contains merely an approximation of the total amount of expenses allegedly incurred only in sales for home consumption. In *Acme*, the court was provided with a record which established that the export price was the home consumption price, less certain enumerated expenses incurred only in domestic sales. The total percentage represented by such expenses was definite and accurate. A catalog of expenses without proof of an accurate total figure is an inadequate foundation for a conclusion that a price minus such expenses is a price which fairly reflects market value.

In addition, recent decisions of this court have indicated that the standard of proof for establishing export value is not a loose one.

Thus in *Union Carbide Corporation* v. *United States*, 55 Cust. Ct. 542, Reap. Dec. 11039, application for review pending, when the plaintiff failed to specify the cost elements which influenced the home market price, the court determined that the differential between the export price and the home market price had not been properly shown and, therefore, plaintiff had failed to prove that the price contended for fairly reflected market value.

Similarly, in *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 55 Cust. Ct. 586, Reap. Dec. 11058, application for review pending, it was held that plaintiff had failed to account for the differential between the export price and home price by stating only the items of expense and not the costs thereof. See also *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 56 Cust. Ct. 653, Reap. Dec. 11152.

The following discussion by Judge Ford, in the recent case of *C. J. Tower & Sons of Niagara, Inc.* v. *United States*, 57 Cust. Ct. 601, Reap. Dec. 11212, application for review pending, of the adequacy of testimony to establish the differential between export and home price, is particularly apt. It is there observed:

\* \* \* This difference, it is contended by plaintiff herein, is due to the fact that certain items of expense, in the opinion of the company, are not incurred for export sales.. These items were enumerated by the witness to be sales commissions on Canadian distribution, general and administrative expenses such as advertising, head office sales department operation, head office service department operation, branch accounting department operation, and credit accounting operation. The witness further testified that the sales price to the importer, which did not include the above expense, did include approximately the same percentage of profit as was obtained in Canadian sales. Such cryptic language relative to these items "which are not applicable, in our opinion, to export shipments" and profit for exports being "approximately the same percentage" as for domestic sales is not such as would permit the court to make a finding of export value contended for by plaintiff. Accordingly, plaintiff has failed to overcome the presumptive correctness attached to the value.

While it may not necessarily be imperative that plaintiff prove, in every case, the specific amounts of each expense not incurred in selling for export, it is essential that an accurate total figure for such expenses be shown in order that the courts may have certain minimal facts with which to judge whether the export price fairly reflects the market value of the merchandise in issue.

Here, the proof offered by the plaintiff is too diffuse, too approximate, and too cryptic to enable the court to determine whether certain costs are borne solely by goods sold in the home market and, if so, the precise percentage of home market price represented by these costs. Consequently plaintiff has failed to adequately account for the differential between the export price of these goods and the price for home

consumption and has not overcome the presumption of correctness attaching to the appraised value.

Moreover, while it appears that similar machines were sold for export to the United States, the evidence is inadequate to show the price at which they were sold or the degree of similarity thereof. The affiant's statements, in this connection, to the effect that such prices were not higher than the price to plaintiff are mere conclusions unsupported by proof of the basis of his knowledge of the terms and conditions of such sales. *United States* v. *Baar & Beards, Inc.*, 46 CCPA 92, C.A.D. 705.

In light of the above conclusions, the court finds it unnecessary to reach the question, raised by defendant, of whether Battenfeld-Germany's manner of doing business constituted the ordinary course of trade within the meaning of section 402(f)(1)(B) of the Tariff Act of 1930, as amended, *supra*.

On the record herein, the court finds the following facts:

1. That the merchandise covered by this appeal for reappraisement consists of two injection molding machines exported from West Germany on May 9, 1961.

2. That said merchandise is not specified on the Secretary of the Treasury's final list, 93 Treas. Dec. 14, T.D. 54521, and thus is subject to appraisement under the provisions of section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

3. That appraisement was made on the basis of constructed value, as defined in section 402(d) of said act, as amended, *supra*.

4. That, during 1961, the merchandise was produced and exported by Battenfeld Maschinenfabriken GMBH exclusively to Battenfeld Corp. of America in Chicago, a selected purchaser at wholesale.

5. That there were other German exporters of similar merchandise to the United States during 1961, but the record does not contain evidence of the terms and conditions of their sales.

6. That the export prices of the subject merchandise were greater than the prices for domestic consumption, but the evidence fails to adequately account for the difference.

7. That the plaintiff has failed to establish the existence of an export value for the merchandise and to negative the value found by the appraiser.

I, therefore, conclude as matters of law:

1. That there is no evidence to establish that the export prices of the machines at bar fairly reflected the market value thereof.

2. That plaintiff has failed to overcome the presumption of correctness attaching to the value found by the appraiser.

3. That constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended, *supra*, is the proper basis for the determination of values of the merchandise involved herein.

4. That such values are the appraised values.

Judgment will be entered accordingly.