(A.R.D. 223)

C. J. Tower & Sons of Buffalo, Inc. *v.* United States

Entry No. 21341.

First Division, Appellate Term

(Decided May 31, 1967)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the appellant.
*Carl Eardley*, Acting Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the appellee.

Before OLIVER, WATSON, and RAO, Judges

WATSON, Judge: This is an application for review of the decision and judgment of a judge sitting in reappraisement (Reap. Dec. 11058) affirming the appraisement of a certain concrete mixer, described on the invoice as a spindle mixer, which was exported on April 30, 1960, by Koehring-Waterous, Ltd., Brantford, Ontario, to C. S. Johnson Co., Champaign, Ill. Entry of the merchandise was made by appellant, a customs broker. The mixer in question was invoiced and entered at $8,690 (Canadian currency). The C. S. Johnson Co. is a division of Koehring-Waterous Corp. of Milwaukee, Wis., which owns the exporter corporation herein.

The merchandise was appraised at $16,468 each, less 7½ and 1 percent, less sales tax included (at list; less 7½ percent level), packed, on the basis of "constructed value," as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (the merchandise not appearing on the final list, T.D. 54521, R. 3).

Appellant contended below and contends here that the proper dutiable value of the imported merchandise is represented by the entered unit price of $8,690 each on the basis of export value; or alternatively, that the proper basis of value should be "constructed value" and also at the invoiced and entered value.

The basis of appellant's contention below, as it is here, is that the difference between the entered and appraised values was due to certain selling costs and other expenses which were incurred in selling these mixers in Canada, but which were not incurred in selling the imported merchandise to C. S. Johnson Co. in the United States.

The court below held that the claimed value was not shown to be one which fairly reflects the market value of the merchandise to support appellant's claim for export value and also that appellant failed to prove its alternative claim for "constructed value" since the requirements of constructed value have not been met. *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 55 Cust. Ct. 586, Reap. Dec. 11058. Motion for rehearing was denied in *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 55 Cust. Ct. 598, Reap. Dec. 11063. Specifically, there was in this case, testimony that "the differential in price in Canadian sales ($16,000) from export sales to the United States ($8,690) was due to the cost of advertising, installation of the machine into a concrete batching plant, and warranty for 6 months or 1,500

hours of operation, whichever occurs sooner, in the case of the Canadian sales. These expenses were not incurred in the case of the sales to their affiliate C. S. Johnson Co. in the United States." The court held, however, that "there is no evidence by plantiff of the *specific amounts* of costs incurred by the exporter for the factors which plaintiff states account for the differential * * *" [emphasis ours]; and, therefore, concluded "that plaintiff has failed to prove an export value for the imported merchandise." The trial court also held for the same reason that appellant had failed "to establish cost of production of domestic merchandise in the country of exportation" and, therefore, "cannot possibly succeed on an alternative claim that the constructed value is represented by the invoice prices."

The pertinent statutes herein involved are as follows:

[Sec. 402]   (b)   EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\*       \*       \*       \*       \*       \*       \*

[Sec. 402]   (d)   CONSTRUCTED VALUE.—For purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1)   the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2)   an amount for general expenses and profit equal to that usually reflected in sales of the merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

\*       \*       \*       \*       \*       \*       \*

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

    (A) to all purchasers at wholesale, or

    (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise

without restrictions as to the disposition or use of the merchandise by the purchaser, except * * *.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or * * *.

\*     \*     \*     \*     \*     \*     \*

(g) Transactions Between Related Persons.—

(1) For the purposes of subsection (c)(1) or (d), as the case may be, a transaction directly or indirectly between persons specified in any one of the subdivisions in paragraph (2) of this subsection may be disregarded if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had occurred between persons not specified in any one of the subdivisions in paragraph (2).

(2) The persons referred to in paragraph (1) are:

\*     \*     \*     \*     \*     \*     \*

    (F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.

The issues presented on this application for review of the decision and judgment of the trial court are as follows:

1. Whether the court erred in finding that appellant failed to prove an export value for the involved merchandise.

2. In the event that there is no export value, whether the court erred in finding that appellant failed to prove a value other than the appraised value on the basis of constructed value.

The record made herein consists of the oral testimony of one witness for the plaintiff, and the following documentary exhibits:

Plaintiff's illustrative exhibit 1—a pamphlet containing an illustration of a spindle mixer like the one involved in the case at bar.

Plaintiff's collective exhibit 2—two sheets identified by Mr. Anderson as a summary of costs and profit involved in the production of this particular imported mixer.

Plaintiff's collective exhibit 3—two sheets identified by Mr. Anderson as the costs and profit involved in the production and sale of 2 and 4 yard spindle mixers sold to C. S. Johnson Co. during 1959 and 1960.

Defendant's exhibit A—a letter dated November 6, 1958, and signed by B. E. Murat, as works accountant for Koehring-Waterous, Ltd., showing the Canadian selling price for Model No. 112 S, 4 yard Spindle Type Tilt Mixer.

Plaintiff called as its witness Mr. Ragnar W. Anderson, vice president of Koehring-Waterous, Ltd., the exporter herein. He stated that he was familiar with the imported merchandise, having become so by reviewing cost records, watching the manufacture of the merchandise, relating the merchandise to the costs, and reviewing the literature on the merchandise (R. 6–7). The witness explained that the C. S. Johnson Co. made concrete batching plants of which the mixer is a part or component; that the company incorporates the imported mixers into batching plants and sells the complete plant to concrete contractors (R. 9–10). He further stated that there were no other manufacturers of heavy construction concrete mixers such as are here involved, including tilting concrete mixers, in Canada (R. 11–12). Mr. Anderson testified that, during the years 1959 and 1960, the exporter did not sell spindle type mixers to anyone in the United States but C. S. Johnson Co. (R. 21). He further testified that his company would have been willing to sell the imported merchandise to another company at the same price it was sold to C. S. Johnson Co. under the same circumstances. (R. 25–26).

On cross-examination, Mr. Anderson stated that all his testimony regarding how the price of the imported merchandise was fixed, pursuant to an agreement made prior thereto, was based purely upon what he had read and what he had been told by people (R. 31). On redirect examination, plaintiff's witness testified that, although he had no personal knowledge of the transactions which antedated or preceded his employment with the exporter herein, he did have personal knowledge of the selling price of the machine in question, including how that selling price was fixed, as well as personal knowledge of the cost of the production of the involved concrete mixer (R. 43). Mr. Anderson further testified that the Canadian selling price of $16,000 each takes into consideration certain engineering and

installation costs that would be incurred on a Canadian sale (R. 44).

Plaintiff's exhibit 2 shows that the selling price of $8,690 was arrived at by adding a profit of 11.38 per centum ($989.11) to the total factory cost of $7,700.89. The said factory cost was divided as follows:

| | |
|---|---|
| Material | $4,045.52 |
| Labor | 1,363.46 |
| Burden | 1,866.10 |
| Selling and General Expense | 425.81 |

The figures given are as of a time 2 months before the date of exportation (R.17). Plaintiff's witness explained that the amount of profit realized on this sale of $989.11 represented the difference between all costs and the selling price (R. 20). Plaintiff's witness further explained that the term "burden" in the costs summary referred to manufacturing overhead, including depreciation of building, costs of heat, supervision, and various kinds of indirect labor, such as shop clerks, people who sweep the floor, people who move material around, and all of those who work in the shop but do not work directly on a particular piece (R. 18).

The primary contention of the appellant in this case relates to a claimed export value (section 402(b) of the Tariff Act of 1930, as amended) for the involved merchandise at the invoiced and entered values. If such claimed value is established, it would represent the correct dutiable value for the importation at bar, inasmuch as the primary basis of value of imported merchandise is export value (section 402(a) (1), (2), and (3) of the Tariff Act of 1930, as amended. The importer is a selected purchaser and a related person to the exporter as contemplated by section 402 (f) and (g) of said act, as amended, *supra*. Accordingly, it is essential in the first instance to ascertain whether the entered unit price of $8,690 each fairly reflects the market value of the imported merchandise.

Both parties to this controversy direct our attention to the case of *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841, a case involving similar facts to those in the case at bar. In the *Acme Steel* case, the merchandise consisted of certain steel strapping which was sold by Acme Canada to Acme Chicago, its parent company, at prices lower than it sold to its customers in Canada. The merchandise was appraised at the entered unit values, plus 27.40 percent, on the basis of constructed value, which represented part of the difference between the home market price and the export price to the United States. Sales in Canada were made directly to users and the expenses included selling, distribution, advertising, travel, entertainment, warehousing, freight, and repair and maintenance of tools supplied to customers, which expenses, it appeared, were not required in connection with sales to the United States. The trial court sustained the invoiced

and entered values. This finding was affirmed by the appellate division of the Customs Court (50 Cust. Ct. 529, A.R.D. 152), which found that the export price differed from the domestic price only to the extent of the amount of the said expenses, and that the deduction fairly represented savings effected by the elimination of several items comprising selling expenses. Our appellate court in the *Acme Steel* case, *supra*, page 89, also found that the record therein amply supported the conclusion of the Customs Court that:

The record in the instant case does, * * * establish that included in the price at which such merchandise is sold for home consumption in Canada were certain selling expenses which were not incurred in export transactions; that the export price differs from the domestic price only to the extent of the value of said expenses; and that the 30 per centum deduction fairly represents the savings in cost effected by the elimination of the several items comprising selling expenses.

It also establishes that the invoice prices were equal to the sum of the production costs, general expenses entering into export transactions and profit, and that such prices fairly reflected the market value for exportation to the United States.

This we consider to be substantial evidence of a price which embodies all of the material elements entering into the new statutory definition of export value in the case of sales to one or more selected purchasers. Accordingly, we conclude, as did the court below, that appellee has sustained its burden of establishing that there was an export value for the instant merchandise and that such value was represented by the invoice and entered values.

In so holding, the appellate court in the *Acme Steel* case, *supra*, commenting upon the view held by the majority of the appellate division in that case, at page 89, stated:

We find ourselves in harmony with the view expressed by the majority that all sales in the ordinary course of trade are proper for consideration in ascertaining the price which fairly reflects the market value of the merchandise and that evidence of price, and hence of the value of goods in the foreign market, is relevant to the ultimate determination of the export value of imported merchandise within the ambit of section 402(b) of the Tariff Act of 1930, as amended, supra, in the case of sales to selected purchasers.

In accordance with the foregoing principle announced by the court in the *Acme Steel* case, *supra*, that all sales in the ordinary course of trade are proper for consideration in ascertaining the price which fairly reflects the market value of imported merchandise, a review of the present record in this connection is in order. It may be noted that the separate elements of costs of material, labor, "burden," and selling and general expense to account for the claimed factory cost of the imported mixer and, in addition thereto, a percentage for profit, making up the selling price of $8,690 for the merchandise in question, are indicated in plaintiff's exhibit 2 as well as by the testimony of plaintiff's

witness. Similar elements of costs, however, which constitute the selling price of the merchandise in Canada are not of record. Defendant's exhibit A shows that the selling price of the imported merchandise in Canada was $16,000, sales tax included, subject to a 7½ percent distributor's trade discount and an allowable 2 percent cash discount if payment is made within 10 days. However, there is no evidence in this record on the part of the appellant that the amounts alleged to represent the costs and profit involved in the production of the merchandise which was exported, which elements go to make up the selling price of the merchandise for exportation, have any proximate and equally subject relationship to those costs and profits which, in the ordinary course of trade, enter into the selling price of the same merchandise when sold for home consumption in Canada. In fact, appellant in this case offered no evidence to show what were the usual costs which were incurred in the production of the mixers, and what were the usual profits which were realized or reasonably anticipated on sales, or in the absence thereof, on offers for sale in Canada. Specifically, the fact that the merchandise which was sold or offered for sale in Canada was sold as part of a complete batching plant, does not relieve the appellant of the burden of showing what percentage of profit was realized on such sale. Such evidence as to costs and profit has a direct bearing and relationship in determining the price which fairly reflects the market value of the merchandise under consideration. Without such evidence, the court is unable to determine whether the elements which comprise the selling price of the merchandise for exportation, upon which appellant predicates a claim for statutory export value, are the elements which are usually and properly incurred in the ordinary course of trade, and that such elements alone comprise a price which fairly reflects market value. In such determination, the court cannot accept whatever and only those elements of costs and profit which the exporter, as testified to in this case, chooses to allocate as elements of market value.

In our opinion, the trial judge was correct in holding that inasmuch as "there is no evidence by the plaintiff of the specific amounts of costs incurred by the exporter for the factors which plaintiff states account for the differential * * *, plaintiff has failed to prove an export value for the imported merchandise." In the case at bar, there is no satisfactory evidence to show that the differential in selling prices is directly linked to or is, by reason of the so-called nonincurred costs, proof of which is essential to support appellant's claimed value in this case. In *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 56 Cust. Ct. 653, Reap. Dec. 11152, the court after discussing the *Acme Steel Company* case, *supra*, stated:

That case differs from the instant one in that there the *quantum* of home market selling expenses was not at issue. Here, it is the crux of the dispute between the parties. I follow the *Acme* case, of course,

but I still must determine here, if the plaintiff has shown the selling expenses in a sound and satisfactory manner, as the burden rests on it to do so. [Italics quoted.]

Mere conclusory statements on the part of plaintiff's witness that certain factors—"non-incurred" costs—account for the difference in the selling prices herein are not competent evidence in the establishment of the claimed value. See, *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 459.

The appellant, asserting error on the part of the trial court, argues that in the *Acme Steel* case, *supra:*

* * * No attempt was made to give a breakdown of the specific amounts of costs incurred by the exporter in selling in Canada and not incurred in selling to the United States. [Appellant's brief, page 11.]

It further appeared in the *Acme Steel* case, *supra*, that no such requirement was made by the court. In the latter case, however, it was stipulated that the 27.40 percent increase over the entered value represented part of the difference between the price in the home market and the price for exportation. The court in that case found as a fact that the difference between the appraised value and the entered value represented the total amount of the "non-incurred" costs. In the case at bar, however, there is no stipulation that the difference between the appraised value and the entered value was equal to and represented the amount of the nonincurred costs and no such finding was made by the court in this case. Contrary to the contention advanced by counsel for the appellant on oral argument (page 13–14), the trial judge did not so find, but only stated in his opinion that the testimony of plaintiff's witness was to the effect that the difference between the two prices was by reason of the so-called "non-incurred" costs. The *Acme Steel* case, *supra*, did not, in our opinion, establish as a principle of law the rule that no breakdown of costs is necessary in a situation such as that before us.

The appellant in the case at bar has failed, in our opinion, to establish that the differential in prices between the Canadian sales price and the export price was due solely to the fact that the expenses incurred in the Canadian market were not properly included in the price at which the involved merchandise was sold for exportation. In this connection, we deem pertinent the holdings of the court in the cases of *C. J. Tower & Sons* v. *United States*, 57 Cust. Ct. 601, R.D. 11212, decided August 3, 1966, and *American Greiner Electronic, Inc.* v. *United States*, 57 Cust. Ct. 616, R.D. 11221, decided September 26, 1966.

In the *C. J. Tower* case (R.D. 11212), *supra*, the merchandise consisted of a quantity of aluminum masters upon which material which was to be reproduced is typed or written. Appraisement of the merchandise was made on the basis of constructed value, as defined in sec-

tion 402(d) of the Tariff Act of 1930, as amended, at 20½ cents each, Canadian currency. Plaintiff therein contended, as does appellant in the case at bar, that the proper basis was export value under section 402(b) of said act, as amended, and further that the proper dutiable value of the merchandise was the invoiced price of 14 cents each, Canadian currency, or, alternatively, at the same value on the basis of constructed value.

The merchandise involved in the *C. J. Tower* case (R.D. 11212), *supra*, was exported by Addressograph-Multigraph of Canada, Ltd., to Addressograph-Multigraph Corp. in the United States. The exporter was a wholly owned subsidiary of the importer. Plaintiff's witness in that case, comparing his firm's export and domestic prices, stated that the United States invoice price of 14 cents per master included approximately the same percentage of profit obtained as a result of domestic sales in the Canadian market. He further testified that the United States price was 70 percent of the lowest Canadian domestic selling price and attributed the 30 percent difference to the fact that certain costs, not incurred in, nor applicable to the manufacture of products exported to the United States, were not allocated to such merchandise in determining their cost of production or sales price. Commenting on the testimony as disclosed by the record therein, the court in the *C. J. Tower* case, *supra*, page 605, stated:

* * * Such cryptic language relative to these items "which are not applicable, in our opinion, to export shipments" and profit for exports being "approximately the same percentage" as for domestic sales is not such as would permit the court to make a finding of export value contended for by plaintiff. Accordingly, plaintiff has failed to overcome the presumptive correctness attached to the value.

In the *American Greiner Electronic, Inc.*, case (R.D. 11221), *supra*, the merchandise involved consisted of certain watch timers exported from Switzerland and entered at the invoiced price of 688 Swiss francs, net packed, per unit. The items were appraised at 1,590 Swiss francs, net packed, per unit, on the basis of constructed value under section 402(d) of the Tariff Act of 1930, as amended. Plaintiff claimed therein that the proper basis was export value (section 402(b) of the tariff act, as amended) and that such value was the entered value. Alternatively, plaintiff contended that, if constructed value was the proper basis, such value was likewise represented by the entered value.

The record in the *American Greiner* case, *supra*, established that the merchandise was produced and exported by Greiner Electronic, Ltd., Langenthal, Switzerland, and had been sold in the United States exclusively to the plaintiff, *The American Greiner Electronic, Inc.*, of Stamford, Conn. The record further established that one, Rudolf Greiner, owned all of the stock of the American company and 51 per-

cent of the stock of the Swiss company. Defendant in the case contended, as does the appellee in the case at bar, that, inasmuch as the watch timers in question were sold to a "selected purchaser" within the meaning of section 402(f)(1)(B) of the Tariff Act of 1930, as amended, it was necessary for the plaintiff to prove that the price to the selected purchaser was one "which fairly reflects the market value of the merchandise."

The testimony in the above-cited case further disclosed that watch timers were sold at a "retail" price in Switzerland of 1,590 Swiss francs, which price was reduced by 33⅓ percent for sales made to Swiss "wholesalers." The difference between such a Swiss wholesale price of 1,060 Swiss francs, as so computed, and the invoice price of the involved watch timers of 688 Swiss francs, accordingly amounted to 372 Swiss francs, or approximately 35 per centum. Plaintiff's witness explaining the difference, other than the 33⅓ percent wholesale discount, between the price of 1,590 Swiss francs and the price of 688 Swiss francs to the importer, attributed the total amount of such remaining balance to the cost of warranty, sales organization, advertising and other items stated to be incurred on sales in Switzerland but not incurred on sales to the United States. The court in the *American Greiner* case, *supra*, rejected plaintiff's claim on the basis of export value, and found that the plaintiff, "having failed to show the particular amount of the expenses incurred in sales in the foreign market but not incurred in export sales to the United States," had failed to establish that the invoice price, when compared with the foreign market price, "fairly reflects the market value of the merchandise." In this connection, the court, page 619, stated:

Particular cost factors, absent in export sales to the United States, but present, by reason of their claimed effect, in the foreign market price, are significant considerations in comparing the foreign market price with the invoice price. Without more precise evidentiary support for these cost factors than that contained in Mr. Greiner's indefinite and generalized explanation, plaintiff has not, to the satisfaction of the court, adequately reconciled the difference between the foreign market and invoice prices. Without a more persuasive reconciliation the court cannot find, as it must, that the invoice price, when compared with the foreign market price, fairly reflects the market value of the merchandise.

In our opinion, the situation which prevails in the case at bar parallels that which obtained in the *C. J. Tower* case (R.D. 11212) and in the *American Greiner Electronic, Inc.*, case, *supra*, and calls for a similar conclusion as there made with respect to the proper value applicable to the merchandise here imported. Statutory export value has not been established for the merchandise involved in this case.

In *John V. Carr & Son, Inc.* v. *United States*, 52 CCPA 62, C.A.D. 860, the importer appealed the decision and judgment of the Second

Division, Appellate Term of the Customs Court, which affirmed the appraisement of metal parts for antivibration mounts exported from Canada on the basis of constructed value (section 402(d) of the Tariff Act of 1930, as amended). Appellant therein contended, as in the case at bar, that the merchandise should have been appraised on the basis of export value (section 402(f) of the act, as amended), or, alternatively, that the invoice prices represented the proper constructed value of the merchandise. The manufacturer and importer of the merchandise there involved were subsidiaries of the parent corporation in this country.

The record in the *John V. Carr* case, *supra*, disclosed, *inter alia*, that certain "fixed items," through the accounting system employed by the exporter, were charged only to Canadian operations and were excluded from the computation of export costs. The so-called "fixed items" were described by an accountant for the exporter-appellant therein as "such things as taxes, insurance, depreciation, and other fixed elements of that nature that we would incur anyway." Our appellate court, after pointing out the "relatively wide variance" between Canadian prices of the items under consideration and the prices at which they were sold for exportation to the United States, held that neither an export value nor constructed value as claimed by the importer had been established. In so holding, the court at page 69, stated:

We think the record here supports the conclusion that the assignment of fixed costs to the extent and in the manner disclosed arbitrarily excludes a fair proportion of overhead expenses relating to cost of production which are reasonably and normally chargeable to export operations. We must therefore affirm the holding of the Customs Court that the record is insufficient to establish statutory export value.

\*       \*       \*       \*       \*       \*       \*

The court below reasoned that while the amount required by the statute to be added for general expenses and profit is that relating to shipment to the United States, it did not authorize the exporter's "self-serving accounting procedures arbitrarily to exclude from general expenses those costs which it does not choose to allocate to export operations." The court observed that the statutory criterion is not the exporter's general expenses, but those "equal to that usually reflected in sales of merchandise of the same general class or kind \* \* \* by producers in the country of exportation \* \* \*".

The holding of our appellate court in the *John V. Carr & Son, Inc.,* case, *supra,* as above indicated, fortifies us in our conclusion that the appellant in the case at bar has failed to establish that the invoiced and entered value fairly reflects the market value of the imported merchandise.

Appellant's alternative contention in the case at bar relates to a claimed constructed value under section 402(d) of the Tariff Act of

1930, as amended, *supra*, at the invoiced and entered value. Appellant herein contends (brief page 19) that, under the definition of "constructed value" in the new law (section 402(d) of the Tariff Act of 1930, as amended), it was intended to refer to the costs incurred in exporting the merchandise to the United States, and not the costs accruing on home consumption sales. In our opinion, there was no such congressional intent to limit the term "market under consideration" as given in section 402(g)(1), *supra*, to export sales. Under the latter provision, it is proper to examine the elements of other sales in the market under consideration, whether or not these sales are for exportation, in order to determine whether the elements of value in question fairly reflect the market value of the involved merchandise. In the *John V. Carr & Son, Inc.*, case, *supra*, the court, construing section 402(g), *supra*, at page 69, held:

Relying on the fact that there were no other producers in the country of exportation of merchandise of the same general class or kind, appellant argues that the exporter's "sales were the only sales and obviously the only sales were the usual sales," and the amount asserted by appellant as general expenses on export sales necessarily reflects amounts usually added for general expenses.

Dispositive of this contention, our views are in harmony with those expressed by the Customs Court:

It is obvious that the statutory definition of constructed value is not open to such a construction, especially in the case of transactions between related persons. * * *

In the case at bar, the appellant has failed to present any satisfactory evidence of the general expenses and profit involved in constructed value for merchandise either sold, or in the absence of sales, offered for sale in the Canadian market. Proof of this nature is essential inasmuch as it has a direct bearing on showing the amounts usually reflected in sales in the market under consideration of merchandise "of the same general class or kind as the merchandise undergoing appraisement." (Section 402(g)(1).) Where the export transaction to the United States is between related persons, as in the case at bar, and where constructed value (section 402(d) of the Tariff Act of 1930, as amended) as the proper basis of dutiable value is in issue, such transaction may be disregarded under the provisions of section 402(g) of the Tariff Act of 1930, as amended, *supra*, if in the case of any required element of value, the amount alleged to represent that element "does not fairly reflect the amount usually reflected in sales in the market under consideration of the same general class or kind as the merchandise undergoing appraisement." It appears that the appraiser in this case, in determining the appraised value of the imported merchandise, found that the provisions of section 402(g), *supra*, were applicable. The appraiser's finding of value carried with it a

presumption of correctness, and it is not incumbent upon the Government to prove that the appraised value was proper, until or unless the importer had shown the appraisement to be erroneous and established a different value for the merchandise. *Kenneth Kittleson v. United States*, 40 CCPA 85, 89, C.A.D. 502. In our opinion, plaintiff-appellant in this case has failed to overcome the burden imposed upon it under the statute of not only proving error on the part of the appraiser but in addition thereto of establishing its own claimed value as the proper one.

On the record in this case, we find as facts:

1. The imported merchandise involved in this appeal consists of one 4-cubic yard, model No. 112 S–2A spindle mixer, exported by Koehring-Waterous, Ltd., from Canada on April 30, 1960.

2. The said merchandise was appraised on the basis of constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. The said merchandise does not appear on the final list, T.D. 54521.

4. At or about the time of exportation, the said merchandise was not freely sold, or in the absence of sales, was not freely offered for sale for exportation to the United States to all purchasers at wholesale.

5. The said merchandise was sold, for exportation to the United States, exclusively to the C. S. Johnson Co., a selected purchaser at wholesale.

6. The appellant herein and the exporter, Koehring-Waterous, Ltd., are related persons within the meaning of section 402(g) of the Tariff Act of 1930, as amended.

7. The appellant has failed to prove that the entered value is such which, at or about the time of exportation in the ordinary course of trade, fairly reflects the market value of the merchandise in the principal markets of Canada for exportation to the United States.

8. The appellant has failed to prove that the amount alleged to represent general expenses fairly reflects the amount of general expenses usually reflected in sales, in the market under consideration, of merchandise of the same general class or kind.

9. The appellant has failed to prove that the amount alleged to represent profit fairly reflects an amount of profit usually reflected in sales in the market under consideration of merchandise of the same general class or kind.

We conclude as matters of law:

1. The evidence is not sufficient to overcome the presumption of correctness attaching to the value found by the appraiser, or to establish any other value for the merchandise.

2. Constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise here involved.

3. Such value is the appraised value.

4. The judgment of the trial court is affirmed.

Judgment will be entered accordingly.