(A.R.D. 233)

C. J. Tower & Sons of Niagara, Inc. v. United States

Entry No. 8141.

### Third Division, Appellate Term

(Decided January 30, 1968)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the appellant.

*Edwin L. Weisl, Jr.,* Assistant Attorney General (*Harold L. Grossman,* trial attorney), for the appellee.

Before RICHARDSON and LANDIS, Judges

LANDIS, Judge: The merchandise of this application for review consists of aluminum masters used as stencils to reproduce typed or written material. The only substantive error, of the several errors raised by appellant (plaintiff below), is the allegation that the court below erred in finding and holding that, on the record as made, there was no substantial evidence to overcome the presumption of correctness attaching to the appraised constructed value under section 402(d) of the Tariff Act of 1930, as amended. *C. J. Tower & Sons of Niagara, Inc.* v. *United States,* 57 Cust. Ct. 601, Reap. Dec. 11212. On constructed basis, the appraiser valued the aluminum masters at 20½ cents each, Canadian currency (hereinafter all amounts recited are Canadian currency).

Appellant contends that the aluminum masters should be reappraised on either export or constructed value basis at 14 cents each. It asks this review on the ground that the record below makes out a *prima facie* case for the claimed value.

There appears to be no dispute as to the facts. They are subject to review and are briefly summarized.

Appellant rested its case in chief on the testimony of Mr. Robert A. Davies, secretary and assistant treasurer of Addressograph-Multigraph of Canada, Limited (hereinafter Addressograph, Ltd.), manufacturer and exporter of the appraised aluminum masters. Addressograph, Ltd., is the wholly owned subsidiary of Addressograph-Multigraph Corp., Cleveland, Ohio (hereinafter Addressograph, Ohio), the purchaser and importer of the appraised aluminum masters.

Mr. Davies testified that there are no other manufacturers of comparable or identical aluminum masters in Canada; that Addressograph, Ltd., sells the masters in Canada to consumers through company controlled distributors and that it sells for export only to

Addressograph, Ohio, without restrictions as to the disposition or use of the product.

These brief facts set the controversy. No one much argues that Addressograph, Ohio, is not a selected purchaser in the ordinary course of trade under section 402(f)(1)(B). It bought the masters for 14 cents each. The question is whether that price fairly reflects their market value, which is the only section 402(b) export price to a selected purchaser acceptable under section 402(f)(1)(B).

Where the export sale is to a selected purchaser, the value of the export goods in the foreign market is relevant to consideration of the price which fairly reflects the market value for export. *United States v. Acme Steel Company*, 51 CCPA 81, C.A.D. 841. Mr. Davies testified that Addressograph, Ltd., sold these imported aluminum masters in Canada for 21 cents each in quantities from 1 to 99; for 20½ cents each in quantities 100 to 999; and for 20 cents each in quantities of 1,000 or more. The price for export to the selected purchaser was 14 cents each for any quantity. It is not necessary that "the price at which such merchandise is freely sold in the foreign market * * * be the same as the price at which it was * * * [sold] for exportation to the United States, for export value to exist. It is merely that, in considering the price for exportation, the elements entering into the domestic price which are the same as those entering into the export price have a direct bearing upon whether or not the export price fairly reflects the market value of the merchandise." *United States v. Acme Steel Company*, 50 Cust. Ct. 529, 536, A.R.D. 152.

Mr. Davies was asked why, in his opinion, the price of 14 cents fairly reflected the market value for exportation to the United States. He replied that the price included all the elements of production cost, plus the portion of general expense and administrative expense Addressograph, Ltd., *deemed* applicable to export shipments, plus *approximately* the same percentage of profit as was obtained on domestic sales in the Canadian market. (R. 22.) Mr. Davies broke down the costed export price in terms of 1,000 masters produced in slightly less than one day, approximately the day before exportation of those in this review. The total cost, $140, 14 cents each (R. 16), included component general expenses, overhead, and profit of $32.32. This, said Mr. Davies, is the amount Addressograph, Ltd., deemed to be "a fair approximation of the elements in general expense and administrative expense, which would be applicable to export shipments." (R. 18.) Mr. Davies further testified that the 20½ cents price to consumers in Canada included "among other things, an amount for field distribution organization costs in the form of commission to the Canadian distribution organization, and * * * also * * * elements of general expense and administrative expense, such as advertising expenses, the opera-

tion of * * * [the] head office sales department and * * * certain portions of * * * office and administrative expenses, which are not applicable, in our [Addressograph, Ltd.] opinion, to export shipments." (R. 21.) There were, said Mr. Davies, no commissions, no advertising costs, and no head office sales and service department expenses, in the export sales to Addressograph, Ohio. Also, he said, Addressograph, Ltd., did not consider credit department and branch accounting division expenses administratively connected to export shipments. (R. 22.) Mr. Davies testified that these domestic expenses, together with field distribution cost, accounted for the approximate 30 percent difference between the lowest price in Canada to consumers (20 cents) and the 14 cents export price. (R. 24.)

The court below held that the testimony of Mr. Davies was not substantial evidence sufficient to overcome the presumptively correct appraised value. We agree.

Appellant's counsel is quite right that, in *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841, the items identified as making up the difference in home market and export prices were not broken down to specific costs of each item. However, much of the disparity in prices in the *Acme* case was cured by stipulation and *Acme*, of course, cannot be an authority on scope of proofs necessary in another and different case.

As Judge Watson, writing for the First Division, Appellate Term, said in *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 55 Cust. Ct. 586, Reap. Dec. 11058, affirmed *Id.* v. *Id.*, 58 Cust. Ct. 534, A.R.D. 223:

> * * * In the * * * [*Acme Steel* case, *supra*], however, it was stipulated that the 27.40 percent increase over the entered value represented part of the difference between the price in the home market and the price for exportation. The court in that case found as a fact that the difference between the appraised value and the entered value represented the total amount of the "non-incurred" costs. In the case at bar, however, there is no stipulation that the difference between the appraised value and the entered value was equal to and represented the amount of the non-incurred costs and no such finding was made by the court in this case. Contrary to the contention advanced by counsel for the appellant on oral argument * * *, the trial judge did not so find, but only stated in his opinion that the testimony of plaintiff's witness was to the effect that the difference between the two prices was by reason of the so-called "non-incurred" costs. The *Acme Steel* case, *supra*, did not, in our opinion, establish as a principle of law the rule that no breakdown of costs is necessary in a situation such as that before us. [*C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 58 Cust. Ct. 834, at page 842.]

Since the *Acme* case, a number of decisions have come down involving differences in a seller's price to buyers in the home market and export price to an affiliate company. The clear trend of the decisions is to

look for proofs breaking down the specific cost items making up the difference between the home market price and export price. *Union Carbide Corporation v. United States*, 55 Cust. Ct. 542, Reap. Dec. 11039, affirmed *Id.* v. *Id.*, 58 Cust. Ct. 821, A.R.D. 222; *C. J. Tower & Sons of Buffalo, Inc.* v. *United States, supra; C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 56 Cust. Ct. 653, Reap. Dec. 11152, review dismissed *Id.* v. *Id.*, 57 Cust. Ct. 749, A.R.D. 213; *The American Greiner Electronic, Inc.* v. *United States*, 57 Cust. Ct. 616, Reap. Dec. 11221; *J. E. Bernard & Co., Inc.* v. *United States*, 58 Cust. Ct. 598, Reap. Dec. 11265.

Mr. Davies testimony, when you get down to it, does not establish anything very positive. General testimony, lacking specifics, is not entitled to much weight. *J. E. Bernard* v. *United States, supra.*

Appellant's alternative claim that 14 cents each is the proper constructed value under section 402(d) can at best be only a constructed value for export to a selected purchaser. Section 402(d) and related section 402(g) obviously do not define a constructed value for export to a selected purchaser. *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 58 Cust. Ct. 834, A.R.D. 223.

We adopt and incorporate by reference the findings and conclusions of the court below.

The judgment below is affirmed. Judgment will enter accordingly.