(R.D. 11521)

INTERNATIONAL EXPEDITERS, INC. v. UNITED STATES

Entry Nos. 6964; 4142; 18602; 12947.

(Decided May 9, 1968)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

RICHARDSON, Judge: The merchandise of this appeal consists of soleplates and switch assemblies exported from England and imported at various dates from May 1958 to January 1959. When entered at Chicago, it was appraised at the entered values, plus 13½ percent on the basis of constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. Plaintiff contends that export value, as defined in section 402(b) of said act, is the proper basis and that the export value is the entered value. Alternatively plaintiff claims that if constructed value is the basis, then the constructed value is the entered value.

In this case, the exporter, Sunbeam Electric, Limited, of Glasgow, is a wholly owned subsidiary of Sunbeam Corporation, Chicago, consignee.

The statutes involved are:

Section 402(b)—

EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation

to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(d)—

CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarly permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

Section 402(f)—

DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

\*     \*     \*     \*     \*     \*     \*

Section 402(g)—

TRANSACTIONS BETWEEN RELATED PERSONS.—

(1) For the purposes of subsection (c) (1) or (d), as the case may be, a transaction directly or indirectly between persons specified in any one of the subdivisions in paragraph (2) of this subsection may be disregarded if, in the case of any element of

value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had occurred between persons not specified in any one of the subdivisions in paragraph (2).

(2)  The persons referred to in paragraph (1) are:
(A)  Members of a family, including brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants;
(B)  Any officer or director of an organization and such organization;
(C)  Partners;
(D)  Employer and employee;
(E)  Any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the outstanding voting stock or shares of any organization and such organization; and
(F)  Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.

The record consists of two affidavits submitted on behalf of the plaintiff and the official papers. Defendant introduced no evidence. Both of plaintiff's affidavits were executed by W. A. Macdonald who, at the time of exportation, was chief accountant of Sunbeam Electric, Limited.

In his first affidavit, Mr. Macdonald stated this merchandise was sold at a unit price of $2.21 each. Said price is based upon the cost of production of previous shipments, plus a profit. From the books and records, Mr. Macdonald listed the following costs:

|  | Price per 100 Units |
|---|---|
| Cost of material | $112. 252 |
| Cost of manufacturing labour | 9. 722 |
| Total factory overhead costs, including all general factory expenses | 44. 636 |
| Provision for scrap | 3. 450 |
| Cost of handling (i.e., stores, progress, goods inwards, etc.) | 5. 937 |
| Total cost unpacked | 175. 997 |
| Cost of packing | 34. 477 |
| Total cost | 210. 474 |
| Selling price to Sunbeam Corporation | 221. 000 |
| Therefore estimated profit on an estimated fully absorbed basis | 10. 526 |

Included in the foregoing are all fixed costs, including development and engineering costs incurred by the company, indirect labor, consumables, tool writeoff, electricity, rent, insurance, depreciation, direct expense, and all general overheads, such as toolroom, depreciation on buildings, and general electrical equipment.

Affiant stated no selling expenses were incurred since none of the sales organization of Sunbeam Electric, Limited, were involved in transactions with Sunbeam Corporation, Chicago. Further, were it not for the fact that Sunbeam Corporation, Chicago, was the sole buyer in the United States, Sunbeam Electric, Limited, would have been willing to sell to other electric buyers in the United States at the same price. During 1958, Sunbeam Electric, Limited, did not sell soleplate assemblies as such in the United Kingdom, but only completed irons.

In his second affidavit, Mr. Macdonald stated that during 1958, to his knowledge, Sunbeam Electric, Limited, was the only British company selling soleplate and switch assemblies with a cast in element for export to the United States. During the period June 14, 1954 to October 31, 1964, all entries in the books of account and other financial records of Sunbeam Electric, Limited, were made by the affiant or under his supervision, and all of the facts and figures relating to cost of production, as set forth in his prior affidavit, were taken by him from the books and records of Sunbeam Electric, Limited.

Under the provisions of 28 U.S.C., section 2633 the appraised value is presumptively correct and the burden is upon the plaintiff to prove that the appraised value is erroneous and secondly, that the claimed value is correct. See *United States* v. *Acme Steel Company*, 51 CCPA 81, 87, C.A.D. 841; *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 55 Cust. Ct. 586, 589, Reap. Dec. 11058, affirmed, 58 Cust. Ct. 834, A.R.D. 223. In *Acme* the importer was able to proceed to establish an export value after the Government conceded that there was no other Canadian exporter of merchandise of the same general class or kind, thus enabling the importer to move from constructed value to export value as a basis.

Here, the importer must first overcome the presumption that the appraised value reflects "an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation," section 402(d). It must be presumed that the appraiser found the exporter does not constitute the only producer in Great Britain of the merchandise of the same general class or kind as that here involved. The statement by Mr. Macdonald, Chief Accountant of Sunbeam Electric, Limited, that "during the year 1958, to my knowledge, Sunbeam Electric, Limited, was the only British Company selling soleplate and

switch assemblies with a cast in element for export to the United States" begs the question as to the adequacy of his knowledge as to the solitary status of his company as the British seller of this merchandise. Mr. Macdonald personally made all entries or under his supervision had entries made. He is well-qualified to testify as to all internal affairs of Sunbeam, Limited, but there is no evidence to establish the fact that he was in a position to know whether there were any other sellers of merchandise of the same class or kind in England at the time. Moreover, Mr. Macdonald's statement taken at face value does not eliminate the existence of British producers as distinguished from British sellers for export.

Plaintiff's proofs on value deal solely with the cost of materials and labor to Sunbeam Electric. There is no evidence of what would be the *usual* addition for profit and general expenses for sales of the item in question in the principal market—merely the additions for profit and general expenses actually made by Sunbeam Electric. Since the court, for the reasons stated above, cannot accept affiant's statement as to the lack of other British sellers of merchandise of the same class or kind, the additions for profit and general expenses by Sunbeam Electric do not constitute the usual additions for profit and general expenses required by statute. In the case of *J. L. Wood* v. *United States*, 58 Cust. Ct. 682, R.D. 11292, the imported merchandise, consisting of bus shells imported from Canada, was assessed on the basis of constructed value and plaintiff claimed export value. In that case, it was stipulated that the appraiser's additions for general expenses and profit were based on the sale of completed buses in Canada and the parties also stipulated as to the cost of materials and labor. In the case at bar the Government has made no stipulation establishing the basis for the appraiser's addition of 13.4 percent to the invoiced value. In view of plaintiff's failure to overcome the presumption of correctness attaching to the appraiser's findings as to constructed value, the question of whether or not plaintiff has proven an export value does not arise.

On the record herein, I find as facts:

1. The merchandise of this appeal consists of soleplates and switch assemblies exported from England in 1958 by Sunbeam Electric, Limited, and imported for the account of Sunbeam Corporation, Chicago.

2. Appraisement was made on the basis of constructed value as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at $2.21 plus 13½ percent per unit.

3. Plaintiff has failed to prove that the amount in the invoiced price purporting to represent general expenses and profit is equal to that usually reflected in sales of merchandise of the same general class or kind which is made by producers in England for export to the United States.

Therefore, I conclude as matters of law:

1. Plaintiff has failed to overcome the presumption of correctness attaching to the value found by the appraiser.

2. Constructed value as defined in section 402(d) of said act as amended is the proper basis for the determination of the value of the subject merchandise.

3. The appraised value is the constructed value.

Judgment will be entered accordingly.