(R.D. 11221)

THE AMERICAN GREINER ELECTRONIC, INC. v. UNITED STATES

Entry No. 459057.

(Decided September 26, 1966)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Earl R. Lidstrom* of counsel) for the plaintiff.

*J. William Doolittle*, Acting Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

FORD, Judge: This is an appeal from the appraisement of certain watch timers, described on the invoice as "Chronografic Record," exported from Switzerland and entered at the invoiced price of 688 Swiss francs, net packed, per unit. The items were appraised at 1,590 Swiss francs, net packed, per unit, on the basis of constructed value under section 402 (d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

Plaintiff claims that the proper basis of value is export value, as defined in section 402 (b) of said act, as so amended, and that such value is the entered value. Alternatively, plaintiff contends that, if constructed value is the proper basis, such value is likewise represented by the entered value. At the trial, plaintiff introduced evidence in support of an alternative claim for United States value, as defined in said act, as amended, but, in its brief plaintiff stated that it did not press for United States value at this time and omitted from the brief reference to those portions of the record pertaining thereto. Accordingly, the claim for the United States value is deemed abandoned.

The statutory definitions of the values in contention read as follows:

SEC. 402. VALUE.

\* \* \* \* \* \* \*

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordi-

nary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

\* \* \* \* \* \* \*

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

\* \* \* \* \* \* \*

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

\* \* \* \* \* \* \*

(g) Transactions Between Related Persons.—

(1) For the purposes of subsection (c) (1) or (d), as the case may be, a transaction directly or indirectly between persons specified in any one of the subdivisions in paragraph (2) of this subsection may be disregarded if, in the case of any element of value

required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had occurred between persons not specified in any one of the subdivisions in paragraph (2).

(2) The persons referred to in paragraph (1) are:

\*　　\*　　\*　　\*　　\*　　\*　　\*

(E)　Any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the outstanding voting stock or shares of any organization and such organization; and

(F)　Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.

The parties agree that the subject merchandise does not appear on the final list, published by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521, pursuant to section 6(a) of the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, and that the basis of the appraised value was, in fact, constructed value.

The record establishes that the merchandise was produced and exported from Switzerland by Greiner Electronic, Ltd., Langenthal, Switzerland, and has been sold in the United States exclusively to the plaintiff, The American Greiner Electronic, Inc., of Stamford, Conn. The record further establishes that one, Rudolf Greiner, owns all of the stock of the American company and 51 percent of the stock of the Swiss company.

In connection with the relationship between these companies, defendant offered in evidence (exhibit B for identification) a Treasury Department Form A–16 questionnaire for the purpose, as stated in the record by Government counsel, of showing the intercompany relationship. The court reserved decision as to its admissibility. The question of the relationship not only was not disputed by plaintiff but also was conceded by plaintiff's witnesses. Since the fact sought to be established by exhibit B for identification is conceded, no useful purpose would be served by its receipt in evidence. Therefore, plaintiff's objection to the admission of the document is sustained.

Defendant argues that, inasmuch as the merchandise was sold to a "selected purchaser" within the meaning of section 402(f)(1)(B), *supra*, it is necessary for the plaintiff to prove that the price to the selected purchaser was one "which fairly reflects the market value of the merchandise." Similarly, plaintiff asserts that this issue, i.e.,

whether the invoice price did fairly reflect the market value, is the crux of the case. Other statutory requirements which plaintiff was required to satisfy to sustain its claimed values were not so seriously contested.

Our appellate court in *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841, pending which decision this case was suspended, held that, in determining whether a price fairly reflects the market value of merchandise, in the case of sales to selected purchasers, all sales in the ordinary course of trade may be considered, including evidence of the price, hence of the value of goods, in the foreign market.

The above-mentioned Mr. Rudolf Greiner, as president of the Swiss company, testifying on behalf of plaintiff, said that his company had no price list for sales of watch timers sold in Switzerland and sold them at different prices to different customers. Mr. Greiner's testimony regarding prices was that, in 1960, watch timers were sold at a "retail" price in Switzerland of 1,590 Swiss francs, which price was reduced by 33⅓ percent for sales made to Swiss "wholesalers." The difference between such a Swiss wholesale price of 1,060 Swiss francs, as so computed, and the invoice price of the subject importations of 688 Swiss francs, is, of course, 372 Swiss francs, or approximately 35 per centum.

It should be noted that Mr. Greiner testified that the price of 1,590 Swiss francs was the retail price to the final consumer. This explanation is consistent with the witnesses' understanding that a retailer is a person who uses the watch timers for his own use, even if that use is in the manufacture of watches. A wholesale sale, on the other hand, is, according to the witness, a sale to a firm which sells rather than uses the instruments. The distinction made by Mr. Greiner between retail sales and wholesale sales is, of course, not reflected in the statute. Section 402 (f) (3), *supra*, includes, as a purchaser at wholesale, one, such as Mr. Greiner's "retailer," who buys for industrial use.

When asked to explain the amounts of difference, other than the 33⅓ percent wholesale discount, between the price of 1,590 Swiss francs and the price of 688 Swiss francs to the importer, Mr. Greiner attributed the total amount of such remaining balance to the cost of warranty, sales organization, advertising, exhibitions, and sales promotion, which is incurred on sales in Switzerland, but not incurred on sales to the United States. However, Mr. Greiner did not state what the specific amounts of each of these nonincurred cost items were, nor is there anything in the record sufficient to show a breakdown of the aggregate amount of such nonincurred costs.

Particular cost factors, absent in export sales to the United States, but present, by reason of their claimed effect, in the foreign market

price, are significant considerations in comparing the foreign market price with the invoice price. Without more precise evidentiary support for these cost factors than that contained in Mr. Greiner's indefinite and generalized explanation, plaintiff has not, to the satisfaction of the court, adequately reconciled the difference between the foreign market and invoice prices. Without a more persuasive reconciliation the court cannot find, as it must, that the invoice price, when compared with the foreign market price, fairly reflects the market value of the merchandise.

With respect to its alternate claim that, if the proper basis of value is constructed value, it likewise is the invoiced and entered price, plaintiff introduced a statement (plaintiff's exhibit 2) purportedly prepared from the books of Greiner Electronic, Ltd., which is claimed to show the costs incurred, including general expense and profit, in producing and selling the watch timers for exportation to the United States. Such costs were broken down as follows:

| | | | | | | Swiss Francs: | |
|---|---|---|---|---|---|---|---|
| 1. | Direct cost of materials | | | | | 230. — | |
| | Handling, stocking, interests | | | + 7% | | 16. 10 | 246. 10 |
| 2. | Direct cost of labor: | | | | | | |
| | Machine shop | 8 | hours at | 5. 70 | | 45. 60 | |
| | Handwork shop | 1. 2 | ” | 4. 02 | | 4. 85 | |
| | Galvanoplating | 0. 5 | ” | 3. 69 | | 1. 85 | |
| | Spray painting | 1. 8 | ” | 4. 01 | | 7. 20 | |
| | Mechanical assembly | 5. 5 | ” | 3. 96 | | 21. 80 | |
| | Electrical assembly | 11 | ” | 2. 93 | | 32. 25 | |
| | Final inspection | 0. 5 | ” | 5. 71 | | 2. 85 | 116. 40 |
| | Non productive hours, social expenses, holidaiys: [sic] | | | | | | |
| | Machine shop | 8 | hours at | 4. — | | 32. — | |
| | Handwork shop | 1. 2 | ” | 4. — | | 4. 80 | |
| | Galvanoplating | 0. 5 | ” | 3. 50 | | 1. 75 | |
| | Spray painting | 1. 8 | ” | 2. 25 | | 4. 05 | |
| | Mechanical assembly | 5. 5 | ” | 5. 30 | | 29. 15 | |
| | Electrical assembly | 11 | ” | 2. 55 | | 28. 05 | |
| | Final inspection | 0. 5 | ” | 4. — | | 2. — | 101. 80 |
| | | | | | | | 464. 30 |
| 3. | General expenses, administrative cost, sales expences [sic] | | | | | 29% | 134. 70 |
| | | | | | | | 599. — |
| 4. | Profit | | | | | 14% | 83. 85 |
| | | | | | | | 682. 85 |
| 5. | Packing | | | | | | 5. 15 |
| | | | | | | | 688. — |

One of the requirements of section 402 (d), *supra*, is that the amount claimed for general expenses and profit must be equal to that usually reflected in sales of the same class or kind of merchandise which are made by producers in the country of exportation. To this end, apparently, Mr. Greiner testified that there was one other company in Switzerland, Reno, S.A., which manufactured watch timers. There is nothing in the record to show the amount of general expenses and profit of this other company. In order, however, to show an effort was made to obtain this information, plaintiff submitted (plaintiff's collective exhibit 3) a copy of a letter from Greiner Electronic, Ltd., to Reno, S.A., and the reply received from Reno, S.A. The following excerpt is taken from said reply:

We have not the possibility to answer your questions as it is a fact that our company is a commercial sales distributor.

On the other side, we do not know the calculation of our manufacturer and furthermore, it is not customary to deliver such information to a competitor.

Plaintiff's counsel contends that this exchange of correspondence shows that diligent efforts were made to obtain the required information from "the other manufacturer" who refused to disclose information as to its general expenses and profit. Therefore, so the argument runs, merchandise produced by this other manufacturer is not a factor to be considered.

However, plaintiff makes no attempt to explain or reconcile its allegation that Reno, S.A., is the only other Swiss manufacturer of watch timers with the statement of Reno, S.A., to the effect that it is a commerical sales distributor and has no knowledge of the "calculation" of its unidentified manufacturer. As a result, the court is presented with a record which shows, without controversion, that there is another Swiss manufacturer, but nothing to show the identity, the general expenses, or the profit of that manufacturer. Plaintiff's communication with the self-styled "sales distributor" for an unidentified manufacturer is inadequate to show that degree of diligence to ascertain such information as was held sufficient in *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147, and, on remand, *Berben Corporation* v. *United States*, 51 Cust. Ct. 314, Reap. Dec. 10552. Without evidentiary facts to show that plaintiff made diligent but unrewarded efforts to ascertain the required information, there is nothing in the record to warrant a finding of adequate diligence. Lack of proof of the adequacy of such diligence on the part of plaintiff leaves undisturbed the presumptively correct value set by the appraiser.

On the basis of the entire record herein, the court makes the following findings of fact:

1. The merchandise covered by this appeal for reappraisement consists of watch timers exported from Switzerland by Greiner Electronic,

Ltd., Langenthal, Switzerland, and imported by The American Greiner Electronic, Inc., of Stamford, Conn.

2. Said merchandise is not specified on the Secretary's final list, 93 Treas. Dec. 14, T.D. 54521, *supra*, and thus is subject to appraisement under the provisions of section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, *supra*.

3. Appraisement was made on the basis of constructed value, as defined in section 402(d) of said act, as amended, *supra*.

4. The importer and exporter are related persons within the meaning of section 402(g) of said act, as amended, *supra*.

5. The subject merchandise was not sold by the exporter to anyone in the United States other than the importer.

6. There was another manufacturer in Switzerland of the same general class or kind of merchandise as that involved herein.

7. Plaintiff, as to its claim for export value, as defined in section 402(b) of said act, as amended, *supra*, having failed to show the particular amounts of the expenses incurred in sales in the foreign market but not incurred in export sales to the United States, has failed to establish that the invoice price, when compared with the foreign market price, fairly reflects the market value of the merchandise.

8. Plaintiff, as to its claim for constructed value, as defined in section 402(d) of said act, as amended, *supra*, has failed to prove that the amount in the invoice price purporting to represent an amount for general expenses and profit is equal to that usually reflected in sales of merchandise of the same general class or kind which is made by producers in Switzerland for shipment to the United States.

I, therefore, conclude as matters of law:

1. Plaintiff has failed to overcome the presumption of correctness attaching to the value found by the appraiser.

2. The constructed value of the merchandise, as defined in section 402(d) of said act, as amended, *supra*, is the proper basis for determination of the subject merchandise.

3. Such value is the appraised value.

Judgment will be entered accordingly.