UNITED STATES

v.

The **AMERICAN GREINER ELECTRONIC, INC.**

Reappraisement R61/20888;
Entry No. 459057.

United States Customs Court,
Third Division, Appellate Term.
June 10, 1971.

L. Patrick Gray, III, Asst. Atty. Gen. (Bernard J. Babb, New York City, trial attorney), for appellant.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), for appellee.

Before RICHARDSON and LANDIS, Judges, and ROSENSTEIN, Senior Judge.

LANDIS, Judge:

This case involves the valuation of watch timers which were exported from Switzerland on August 10, 1960[1] and are designated on the invoice as "Chronografic Record".

The case comes to us on application to review the decision and judgment of the trial judge in American Greiner Electronic, Inc. v. United States, 62 Cust.Ct. 905, R.D. 11658, 298 F.Supp. 313 (1969), sustaining on rehearing,[2] appellee's (plaintiff below) claim that, on export value basis as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C., section 1401a), 688 Swiss francs, net packed, per unit, fairly reflected the market value of watch timers sold in the ordinary course of trade to a selected purchaser at wholesale in the United States[3].

Appellant (defendant below) *inter alia* contends that the trial judge

---

1. All references to "watch timers" mean the imported model "Chronografic Record". The manufacturer also produced two other models.

2. The American Greiner Electronic, Inc. v. United States, 57 Cust.Ct. 616, R.D. 11221, decided September 26, 1966. Plaintiff's motion for rehearing, filed October 25, 1966, was granted on December 6, 1966.

3. In *Id.* n. 2, the trial judge rejected this claim on the ground that the proofs did not sufficiently account for the difference between the price to the selected purchaser in the United States and the Swiss home market prices of the watch timers.

erred in not finding and holding that the proper dutiable value of the watch timers was the presumptively correct (28 U.S.C., section 2633) customs appraised value of 1,590 Swiss francs, net packed, per unit, on the basis of constructed value as defined in section 402(d), as amended, *supra*.[4] That contention is set in the context of the allegations that, as between various prices for the watch timers in the home market, the trial judge erred in finding (1) that the home market price of 922.21 Swiss francs to distributors or wholesalers was a relevant price to consideration of whether the 688 Swiss francs wholesale price to the selected purchaser fairly reflected the market value, and in finding and holding (2) that the accounting of record, showing and attesting to specific costs included in the 922.21 francs home market price, and not incurred in export sales to the selected purchaser, substantially established that in the ordinary course of trade the 688 Swiss francs wholesale price to the selected purchaser fairly reflected the market value of the watch timers. We conclude that the judgment below is not contrary to the weight of the evidence and affirm.

The preferred basis for valuation of imported merchandise under section 402, as amended, *supra*, is export value which, in the context of section 402(b) and 402(f) here pertinent, is defined as follows:

(b) Export value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\*   \*   \*   \*   \*   \*

(f) Definitions.—For the purposes of this section—or, in the absence of

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

\*   \*   \*   \*   \*   \*

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

\*   \*   \*   \*   \*   \*

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

\*   \*   \*   \*   \*   \*

(5) The term "usual wholesale quantities", in any case in which the merchandise in respect of which

---

4. The trial judge, on rehearing, did not reach plaintiff-appellee's alternative claim that, on constructed value basis, 688 Swiss francs was the proper dutiable value. The result reached herein on review makes it unnecessary to consider the alternative claim.

value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

A summary of the facts, material to appellant's allegations, establishes that the imported watch timers were produced and exported from Switzerland by Greiner Electronic, Ltd., of Langenthal, Switzerland, a firm in which one, Rudolph Greiner, owned 51 percent of the stock. The watch timers were sold to The American Greiner Electronic, Inc. of Stamford, Connecticut, a firm in which Rudolph Greiner owned all the stock. No one disputes the fact that American Greiner Electronic, Inc., is a "selected purchaser" within the meaning of section 402(f) (1) (B) of the Tariff Act of 1930, as amended, *supra*.

The record attests that in 1960, the year of export, sales in the home market consisted of one watch timer sold to a Swiss manufacturer of watches at the retail price of 1,590 Swiss francs; 120 to individual Swiss jewelers, for use in their repair of watches, at the retail price of 1,590 Swiss francs and 140 to Swiss distributors in minimum quantities of ten at price of 922.21 Swiss francs, and about 140 for export to American Greiner in minimum quantities of ten at a price of 688 Swiss francs. The price to distributors or wholesalers was for a quantity of at least ten watch timers. The Swiss wholesale price of 922.21 Swiss francs was reached by a series of deductions from the Swiss retail price of 1,590 Swiss francs; a deduction of 3.6 percent for a Swiss federal tax not incurred in wholesale transactions, a wholesale discount of 33⅓ percent, a quantity discount of 5 percent and a 5 percent cash discount. All purchasers in the home market buying minimum quantities of ten watch timers got the 5 percent quantity discount. The 5 percent cash discount was also available to all Swiss jewelers in the home market.

The difference remaining of approximately 25 percent between the Swiss wholesale price of 922.21 Swiss francs and the price to American Greiner of 688 Swiss francs was attributed to a differential in costs incurred in selling in the home market and not incurred in selling to the United States. Exhibit 10, the affidavit of Ernst Mueller, a duly qualified accountant familiar with the financial records of Swiss Greiner, is an accounting of the difference in costs.

Assessing and weighing the above facts, appellant contends that the trial judge committed reversible error when, in disregard of the other home market prices, he selected the home market price of 922.21 Swiss francs to distributors or wholesalers relevant to consideration and determination of whether the export price to the selected purchaser in the United States fairly reflected the market value of the watch timers. The thrust of the contention is the court of appeals statement, cited by appellant, that "all sales in the ordinary course of trade are proper for consideration in ascertaining the price which fairly reflects the market value of the merchandise and that evidence of price, and hence of the value of goods in the foreign market, is relevant to the ultimate determination of the export value of imported merchandise within the ambit of section 402(b) of the Tariff Act of 1930, as amended, *supra*, in the case of sales to selected purchasers." United States v. Acme Steel Company, 51 CCPA 81, 89, C.A.D. 841 (1964).

The record summarized above establishes that the watch timers were sold in the Swiss home market at different prices to different classes of customers, to wit, manufacturers of watches, jewelers selling and fixing watches, and distributors or wholesalers of watch timers. It may well be that, under *Acme, supra*, all the different prices to the different customers are relevant. In our opinion, the trial judge did not disregard any of

the prices in the foreign market as appellant contends. The issue before us rather is whether there is any substantial basis for the trial judge to utilize the home market price of 922.21 Swiss francs in determining whether the export price of 688 Swiss francs to the selected purchaser fairly reflects market value. The trial judge was of the opinion that the 922.21 price was a substantially viable home market value within the concept of sales at wholesale in the "usual wholesale quantity". Appellant's argument, on this point, is a maze that starts with the concept of usual wholesale quantity (appellant appears to approve the concept but argues against it) and ends with the proposition that a home market price, incorporating discounts that are not freely offered to all purchasers in the home market, is tainted because "[i]f there were no proof that a discount contended for was not freely offered for exportation to the United States, an export value with the discount deducted could not be sustained." The vitality appellant brings to the broad sweeping arguments lacks the strength of close analysis of the facts and law.

Appellant concedes that the price of the watch timers in the Swiss home market was affected by the quantity sold to the extent of the 5 percent quantity discount to all purchasers buying a minimum quantity of 10 watch timers. Wholesalers who bought a minimum of 10 watch timers also were entitled to an additional 33⅓ percent discount. Appellant's main concern is with the deduction of the 3.6 percent federal tax, 5 percent cash discount, and especially with the 33⅓ percent wholesale discount, in the Swiss price to wholesalers at home. The record establishes that the Swiss federal tax attached only to retail sales to consumers in the home market. It was therefore properly deducted in the sales price to the wholesaler in the home market. Mr. Greiner testified that the watch timers sold in the home market to all jewelers at the retail price of 1,590 Swiss francs, less 5 percent cash discount. Although Mr. Greiner was not asked and did not tie the 5 percent cash discount to sales to manufacturers of watches, his testimony that manufacturers of watches were consumers of the same category of purchasers as jewelers, supports the natural inference that, for cash, manufacturers of watches were also entitled to the 5 percent cash discount, the same as were jewelers. Appellant does not specifically contest the validity of this inference. We assess the 5 percent cash discount to be the same as the 5 percent quantity discount, that is, available to all purchasers in the home market. Appellant's only reference to the federal tax and cash discount is in broad general argument. The failure of appellant to analyze the significance of the federal tax and 5 percent cash discount in terms of the price of record to consumers, as well as to wholesalers, encourages our view that the federal tax and cash discounts were valid deductions in the home market price to wholesalers.

The 33⅓ percent discount in the home market price of 922.21 Swiss francs to distributors and wholesalers, as appellant argues, was not a discount freely offered to all purchasers in all categories. Wholesalers, in the Swiss home market constituted a category of purchasers buying a minimum quantity of 10 watch timers for resale, as opposed to purchasers buying any quantity for consumption. The price of 922.21 Swiss francs was one market value in Switzerland, namely, to wholesalers buying a minimum quantity of 10 watch timers for resale. Appellant argues for another market value in Switzerland, namely, 1,590 Swiss francs, less available discounts, to purchasers of watch timers in any quantity, of the category denominated consumers. One of the purposes of the new section 402(b), *supra*, valuation law was to alter the old valuation definition of "wholesale [market] value", which "excluded the use of the wholesale price if it is offered only to wholesalers and not to retailers purchasing in similar quantities", and "permit the more

frequent use of the actual going wholesale price when it is commercially realistic to do so."[5]

"Purchasers at wholesale," defined in clause (3) of subsection 402(f), as set forth in the bill, is a term used in clause (1) of that subsection and is defined as "purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities." The term "all purchasers" in the present statute has been interpreted as meaning "all" in a sweeping literal sense. These words have caused considerable trouble in administering the valuation statute and the meaning ascribed to them by the courts does not comport with actual conditions under which a large part of the commerce of the world is conducted. The construction placed on the term "all purchasers" by the courts has caused a departure from the concept of tariff valuation of the United States as being predicated on transactions at the wholesale level. The courts have gone beyond the wholesale level and wholesale practice, with the result apparently that the merchandise cannot be considered as freely offered to "all purchasers" unless they are offered under such conditions as will enable every class of buyer who might care to buy to make purchases on equal terms and conditions, whether they are wholesalers, retailers, consumers, etc. This construction is evidently impractical in the face of actual business realities and should be corrected. * * * [6]

Appellant's contention that the only relevant home market value is that represented by the price freely offered to all purchasers, as defined in section 402(b), *supra*, carries a suggestion of the proofs required under the old foreign value basis of valuation (19 U.S.C., section 1402(c)). Appellant's contention would reintroduce a legal concept which the new valuation definition intended to alter. Appellant's argument, which would impose a greater burden of proof than is required by law, or than is necessary to show that an export price to a selected purchaser fairly reflects market value, is, therefore, rejected.

The actual going Swiss wholesale price for these watch timers in the home market, at the time they were exported to the selected purchaser in this case, was 922.21 Swiss francs. The fact that the price included a $33\frac{1}{3}$ percent discount to all wholesalers does not make it less so. The price of 922.21 Swiss francs is a commercially realistic price. When weighed with all the other evidence, in our opinion, it is sufficient to establish that the invoiced price of the watch timers fairly reflects market value to the selected purchaser at wholesale in the United States.

Appellant finally contends that exhibit 10, which is the affidavit itemizing, for the year 1960, the costs incurred in selling watch timers in the home market, and the costs incurred in selling watch timers for export to the selected purchaser (i. e. in explanation of the difference between 922.21 Swiss francs and 688 Swiss francs), is deficient because the affidavit fails to state the amount of the gross receipts, although affiant asserted the selling and distribution costs were respectively 35.3 percent and 9.5 percent of such receipts in the two categories. Appellant beefs up the contention by mathematical compu-

---

5. Hearings before the Committee on Ways and Means on H.R. 6040, 84th Cong., 1st Sess. 15 (1955); (Statement of Hon. H. Chapman Rose, Assistant Secretary of the Treasury).

6. Hearings before the Committee on Ways and Means on H.R. 6040, 84th Cong., 1st Sess. 11 (1955); (United States Tariff Commission Memorandum.)

tations to show that the total selling and distribution costs (605,000 Swiss francs), which the affidavit states were incurred in the home market, far exceed the gross receipts appellant states were realized (which appellant calculates as being 321,499.40 Swiss francs) on the number of watch timers sold in the home market during 1960 (261) at the various prices testified to of record.

■ Appellant also argues that the statements in exhibit 10 of cost percentages were improper as statements of ultimate facts relying upon Brooks Paper Company v. United States, 40 CCPA 38, C.A.D. 495 (1952), and Kobe Import Co. v. United States, 42 CCPA 194, C.A.D. 593 (1955). The trial judge considered that argument and we agree with his statement that it has no merit:

> * * * since the specific cost elements with which the affidavit is concerned are the starting point of a series of logical inferences from which the ultimately issuable fact of "fair reflection" is determined. They are far from being comparable to both conclusory statements regarding usual wholesale quantities. Moreover I cannot see that independent evidence showing the gross receipts of which they are percentages, would in any way advance or retard their standing as primary evidence from which inferences, claims of reasoning and judgments may reasonably be developed. [62 Cust.Ct. at page 912.]

■■ We further note that plaintiff-appellee's counsel, without objection, extensively questioned witness Greiner about the various items set forth in exhibit 10. Appellant, however, did not see fit to cross-examine the witness on the relationship between the selling and distribution costs in exhibit 10 and the gross receipts both on sales in the home market and for export. Having failed to cross-examine the witness on those points, appellee, rather than appellant, is entitled to all reasonable inferences supporting the witness' testimony on the items in exhibit 10. The record does not support appellant's premise for the

assertion it has made as to gross receipts for the first time in its brief. Exhibit 10, in our opinion, is entitled to probative value.

The findings and conclusions of the trial judge are accordingly incorporated herein, and the judgment below is affirmed.